

**ORDERED in the Southern District of Florida on January 15, 2015.**

_____
A. Jay Cristol, Judge
United States Bankruptcy Court

_____

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

In re

SHARON CECILIA HINDS-SANTIAGO             CASE NO. 14-10337-BKC-AJC

    Debtor(s)
_____/

**<u>ORDER DENYING MOTION TO DETERMINE SECURED STATUS OF MORTGAGE
MATURING DURING THE PLAN WHICH IS A LIEN ON REAL PROPERTY (DOC.
NO. 59) FILED BY THE DEBTOR</u>**

THIS CAUSE came on for hearing on December 16, 2014 for the Court to consider the Motion to Determine Secured Status of Mortgage Maturing During the Plan Which is a Lien on Real Property ("Motion to Determine Secured Status") (Doc. No. 59) filed by the Debtor along with the Response to the Motion (Doc. No. 67) filed by MIDFIRST BANK ("Creditor") and the Memoranda of Law filed by the respective Parties (Doc. No. 73 and 74).   Present at the Hearing were Matthew Holtsinger on behalf of MIDFIRST BANK and Jacqueline Ledon for the Debtor. Upon hearing the arguments of counsel at the hearing, the Court took the matter under advisement. The Court has considered the record in this case, and being otherwise fully advised in the premises

and for the reasons stated herein, denies the motion.

Debtor owns real property located at 3200 NW 214th STREET MIAMI GARDENS, FL 33056 on which the Creditor holds a first mortgage lien. The Property in question is the Debtor's homestead Property.

The loan giving rise to Claim #3-1 filed by Creditor was originated on August 20, 1987 as evidenced by a Note and Mortgage executed by the Debtor in favor of Creditor and attached to Creditor's Proof of Claim.

The Debtor and Creditor entered into a prepetition Loan Modification Agreement on May 17, 2006, a copy of which was attached to the Creditor's Response to the Debtor's Motion. Pursuant to the terms of the Loan Modification Agreement, the maturity date of the loan was extended from September 1, 2017 to August 1, 2027. After years of making payments in accordance with the Loan Modification Agreement, the Debtor filed bankruptcy in 2014 seeking to reduce the interest rate on the loan from 10.00% to 3.25%. The Debtor's Motion does not seek to bifurcate Creditor's Claim as the Claim is admittedly fully secured pursuant to Section 506(a).

The Debtor, through her Motion to Determine Secured Status, seeks a judicial determination that Creditor's Claim is one that can be treated pursuant to 1322(c)(2) of the Bankruptcy Code. The Debtor's position is that, because the terms of the Mortgage at loan inception would have resulted in the Mortgage maturing during the Plan period, Section 1322(c)(2) applies to Creditor's Claim. Alternatively, Debtor argues that the Creditor's Claim is based on the original Note and Mortgage because a copy of the Loan Modification was not attached to the Proof of Claim.

The Creditor takes the position that as a result of the prepetition Loan Modification in 2006, the new maturity date of the loan should control in determining the applicability of Section

1322(c)(2). The issue is whether the phrase "last payment on the original payment schedule" as found in Section 1322(c)(2) requires the Court to apply the terms of the Note and Mortgage at loan inception or whether the Court may look to the subsequent modifications to the Note and Mortgage.

The plain language of Section 1322(c)(2) is as follows:

> **(c)** Notwithstanding subsection (b)(2) and applicable nonbankruptcy law--
> **(1)** a default with respect to, or that gave rise to, a lien on the debtor's principal residence may be cured under paragraph (3) or (5) of subsection (b) until such residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law; and
> **(2) in a case in which the last payment <u>on the original payment schedule</u> for a claim secured only by a security interest in real property that is the debtor's principal residence is due before the date on which the final payment under the plan is due, the plan may provide for the payment of the claim as modified pursuant to section 1325(a)(5) of this title.** Emphasis added. 11 U.S.C. Section 1322(c).

This dispute centers around the phrase, "original payment schedule," which is not defined in the Bankruptcy Code. As set forth in the Parties' respective briefs on the issue, there is no case law addressing the precise issue before the Court, so the Court will review the existing case law interpreting Section 1322(c)(2) in an effort to glean some guidance.

The Bankruptcy Court in the District of New Jersey in *In re Rowe* interpreted the phrase "original payment schedule" and concluded that "the words original payment schedule include only mortgages that mature prior to the last payment under the plan. Thus only short term mortgages, mortgages with balloon payments maturing before the date on which the last payment under the plan is due and long term mortgages maturing prior to the date on which the last payment under the plan is due are within the scope of '1322(c)(2)'." *In re Rowe*, 239 B.R. 44, 51 (Bankr. D.N.J. 1999). The contractual maturity date of the underlying loan was a determining factor in the *Rowe* decision.

Because the maturity date of the loan in question was extended by virtue of the 2006 Loan Modification Agreement entered into by the parties prepetition, that Agreement has the effect of rendering any contrary provisions in the Note and Mortgage inoperative and no longer enforceable, including the maturity date at loan inception of September 2017. In fact, the 2006 Loan Modification Agreement specifically states the final payment is due August 1, 2027 "when the entire remaining balance of principal shall thereupon be due and payable, *as originally provided*...." (Emphasis added.) The Agreement further states that the "terms and provisions of the Note and Mortgage shall remain *as originally provided*" and, more significantly, that the "modification shall be effective as of and relate back to the original date of the Note and Mortgage."

The Court believes the phrase "original payment schedule" as defined in Section 1322(c)(2) is better defined as the payment schedule necessary to satisfy the Note, which includes any modifications thereto. If the contractual maturity date of the loan is a date after the last payment due under the Plan, then the Claim is one that falls outside of the purview of Section 1322(c)(2). Accordingly, it is:

ORDERED as follows:

1. The Debtor's Motion to Determine Secured Status of Mortgage Maturing During the Plan Which is a Lien on Real Property is DENIED.

2. By virtue of the prepetition Loan Modification Agreement entered into between the Parties, the maturity date of the loan giving rise to Creditor's Claim No. 3-1 in this case matures on a date after the date on which the last payment under the Plan comes due.

3. The contractual maturity date of the Loan, as modified by the prepetition Loan Modification Agreement, constitutes the "original payment schedule" as that phrase is defined in

Section 1322(c)(2) of the Code.

4. Creditor's Claim No. 3-1 is not a claim that can be treated under Section 1322(c)(2) of the Bankruptcy Code as the Claim is deemed to be long term debt. Accordingly, the interest rate on the loan is not subject to modification in this Bankruptcy Case.

### 

Submitted By:
Matt Holtsinger
Florida Bar No. 092774
Kass Shuler, P.A.
1505 N. Florida Ave. Tampa, FL   33602-2613
mholtsinger@kasslaw.com
812-229-0900

The foregoing is directed to serve copies of this Order upon the interested parties and file a Certificate of Service with this court.